UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE CARLOS LOPEZ, | No. C 06-4772 SI (pr) |
| Plaintiff, | **ORDER GRANTING PARTIAL SUMMARY JUDGMENT** |
| v. | |
| M. VALDEZ, | |
| Defendant. | |

## INTRODUCTION

This case is now before the court for consideration of defendant's motion for summary judgment. For the reasons discussed below, the motion will be granted as to the claim that there was not some evidence to support the decision to put plaintiff in administrative segregation as a validated gang associate and denied as to the claim that plaintiff was not allowed to present his views to the decision-maker.

## BACKGROUND

California prison authorities have determined that prison gangs are a serious threat to institutional security and have devised a system for segregating gang affiliates to reduce that threat. As will be seen, the process involves investigating the inmate to determine whether to validate him as a gang member or associate; if he is validated, he then may be placed in administrative segregation indefinitely. The decision-making process is spread out among several different people and over a long period of time. Thus, the inmate may be investigated for many months, and may be validated as a gang affiliate long before a committee decides whether he should be placed in administrative segregation.

The following facts are undisputed unless otherwise noted.

The complaint in this action concerned the proceedings used to validate plaintiff Jose Lopez as an associate of the Mexican Mafia EME (hereinafter "EME") prison gang and place him in administrative segregation ("ad-seg"). Although Lopez is now in ad-seg at Pelican Bay State Prison, he was validated when he was housed at Salinas Valley State Prison and then was transferred to Pelican Bay's ad-seg unit.

Lopez is serving a sentence of 27 years to life in prison. His most recent criminal conviction occurred in 1998 while he was already in custody and was for two counts of possession of drug paraphernalia in prison.

Defendant Valdez was a correctional officer and the assistant institutional gang investigator ("IGI") for Salinas Valley at the relevant time.

The first step in the gang validation process here may have been an interview of Lopez by the IGI on February 5, 2004, although the parties disagree whether the interview actually occurred. There is a memorandum in Lopez's prison file that purports to memorialize an interview of Lopez on February 5, 2004. See Def. Exh. F. The memorandum is dated February 5, 2004 and is signed at the bottom by defendant correctional officer M. Valdez and lieutenant J. Sareli. Although the memorandum states that "I conducted an interview with Lopez," it does not indicate whether "I" refers to Valdez or Sareli. Lopez denies that the interview took place and states that the fact that an inmate appeal was partially granted shows that the interview never took place. Valdez, on the other hand, argues that the memorandum itself proves that the interview took place.

Lopez initially was placed in ad-seg on February 26, 2004 when staff members received confidential information that his life would be in danger if he remained in the general population. Def. Exh. E. This apparently was not the gang validation placement.

On March 9, 2004, a gang validation package prepared by the IGI at Salinas Valley was reviewed by the Law Enforcement Investigations Unit ("LEIU"). The LEIU panel concluded that 6 of the 7 items submitted in the gang validation package met the CDC's validation requirements and validated Lopez as an associate of the EME prison gang. Def. Exh. G. The

2

six pieces of evidence used to validate Lopez as an associate of the EME prison gang were a June 2, 2003 confidential memorandum, a June 9, 2003 confidential memorandum, a July 17, 2003 CDC-128B, an August 4, 2003 CDC-128B, and two December 3, 2003 CDC-128Bs.

On March 11, 2004, a CDC-114-D form "administrative segregation unit placement notice" was issued to Lopez, informing him that he was being retained in ad-seg pending an LEIU review of a validation package.

On June 23, 2004, another CDC-114-D form was issued to Lopez. This one informed hm that he was to remain in ad-seg because he had been validated as an associate of the EME and was deemed a threat to the safety and security of the institution, staff and other inmates.

On September 22, 2004, Lopez was transferred from Salinas Valley's ad-seg to Pelican Bay's ad-seg. He remains in ad-seg indefinitely as a result of his status as a validated associate of the EME.

## VENUE AND JURISDICTION

Venue is proper in the Northern District of California because the events or omissions giving rise to the claims occurred at Salinas Valley State Prison in Monterey County, which is located within the Northern District. See 28 U.S.C. §§ 84, 1391(b). This Court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983. See 28 U.S.C. § 1331.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and

a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, as is the situation with defendant's challenge to the Eighth Amendment claim, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

Where, as is the situation with defendant's qualified immunity defense, the moving party bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. Smith, 965 F.2d 1532, 1536 (9th Cir. 1992). He must establish the absence of a genuine issue of fact on each issue material to his affirmative defense. Id. at 1537; see also Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. When the defendant-movant has come forward with this evidence, the burden shifts to the non-movant to set forth specific facts showing the existence of a genuine issue of fact on the defense.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). The verified complaint is considered in opposition to the motion for summary judgment.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn

from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631.

**DISCUSSION**

The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution protects individuals against governmental deprivations of life, liberty or property without due process of law. Changes in conditions of confinement for a prison inmate may amount to a deprivation of a constitutionally protected liberty interest, provided that the liberty interest in question is one of real substance. Sandin v. Conner, 515 U.S. 472, 477-87 (1995).

When prison officials initially determine whether a prisoner is to be segregated for administrative reasons and a liberty interest of real substance is implicated, due process requires that they hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, inform the prisoner of the charges against him or the reasons segregation is being considered, and allow the prisoner to present his views. Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir. 1986), cert. denied, 481 U.S. 1069 (1987).[1] The person to whom the prisoner presents his views must be the critical decision-maker. See Barnett v. Centoni, 31 F.3d 813, 815 (9th Cir. 1994). Because classification committees might be "predisposed to transfer any validated inmate to the SHU," the prisoner's meeting with the investigator of his case, who prepares the gang validation packet and forwards his determination that the prisoner is involved with a gang to the LEIU is the critical point. See Madrid v. Gomez, 889 F.Supp. 1146, 1277 (ND. Cal. 1995).

Due process requires that there be an evidentiary basis for the prison officials' decision to place an inmate in segregation for administrative reasons. Superintendent v. Hill, 472 U.S. 445, 455 (1985); Toussaint, 801 F.2d at 1104-05. This standard is met if there is "some evidence" from which the conclusion of the administrative tribunal could be deduced. Superintendent v. Hill, 472 U.S. at 455; Toussaint, 801 F.2d at 1105. The "some evidence"

---

[1] The more stringent procedural protections required by Wolff v. McDonnell, 418 U.S. 539 (1974), for disciplinary decisions are not necessary because placement in the SHU for gang affiliation is done as administrative segregation rather than disciplinary segregation. See Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997).

5

standard applies to an inmate's placement in SHU for gang affiliation. See Bruce v. Ylst, 351 F.3d 1283, 1287-88 (9th Cir. 2003). There is some authority for the proposition that the evidence relied upon to confine an inmate to the SHU for gang affiliation must have "some indicia of reliability" to satisfy due process requirements. See Madrid v. Gomez, 889 F. Supp. at 1273-74; see also Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir. 1990), cert. denied, 502 U.S. 874 (1991) (considering accuracy of polygraph results when used as evidence to support placement in administrative segregation); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) (evidence relied upon by a prison disciplinary board must have "some indicia of reliability").[2]

As evident in the "Background" section above, the parties disagree about whether Lopez ever had an opportunity to present his views to the IGI during the course of the validation process. If believed, Lopez's evidence would show a due process violation. If believed, Valdez's evidence would defeat Lopez's claim. But summary judgment is not the place for credibility determinations. The court could not grant judgment in Valdez's favor without accepting his version and disbelieving Lopez's version of the events that transpired. A trier of fact must hear both versions and decide who to believe. Lopez has established a "'genuine issue for trial'" concerning whether he was afforded his due process right to present his view to the decision-maker. Celotex Corp., 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Summary judgment therefore is not appropriate on this due process claim. The same factual dispute that precludes summary judgment on the claim precludes summary judgment on the qualified immunity defense: Valdez would not be entitled to qualified immunity under Lopez's version of the facts.

---

[2] If the reliability requirement applies to an administrative segregation decision, and if the information relied upon by the committee are the statements of an unidentified informant, due process requires that the record contain: (a) some factual information from which the committee can reasonably conclude that the information was reliable and (b) a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name. See Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987), cert. denied, 487 U.S. 1207 (1988). Reliability may be established by: (1) the oath of the investigating officer appearing before the committee as to the truth of his report that contains confidential information, (2) corroborating testimony, (3) a statement on the record by the chairman of the committee that he had firsthand knowledge of sources of information and considered them reliable based on the informant's past record, or (4) in camera review of the documentation from which credibility was assessed. Id. at 186-87.

6

There is not a triable issue of fact that there was some evidence to support the decision to validate Lopez.[3] It is undisputed that six pieces of evidence were used to validate Lopez as an associate of the EME prison gang. See Resp. Exh. G. They were: (1) a June 2, 2003 confidential memorandum, (2) a June 9, 2003 confidential memorandum, (3) a CDC-128B dated July 17, 2003, (4) a CDC-128B dated August 4, 2003, (5) a CDC-128B dated December 3, 2003, and (6) another CDC-128B dated December 3, 2003. Lopez alleges that this evidence was not constitutionally sufficient or reliable. This requires the court to examine each piece of evidence that led to the validation decision to see if there was some evidence to support the decision.

The June 2, 2003 confidential memorandum contains information obtained by a correctional employee during an interview of a confidential informant as well as from a list retrieved from the rectum of an inmate. Lopez's name appeared on the list along with the names of validated EME members and associates. The confidential informant identified Lopez as an associate in good standing. The information met CDC reliability standards because the confidential informant incriminated himself in criminal activity at the time of providing the

---

[3] The sufficiency of the evidence can be determined as a matter of law even though there is a triable issue as to whether Lopez was interviewed by Valdez due to the fractured nature of the decision-making process and the very low evidentiary requirement of Superintendent v. Hill. The evidentiary sufficiency question focuses on the pieces of evidence actually relied upon to place the inmate in ad-seg as a validated gang affiliate. The IGI's interview and recommendations have no constitutionally significant consequence until further action is taken by the LEIU (which makes the validation decision) and the placement committee (which decides whether to put the inmate in ad-seg). For example, if the LEIU looks at the gang validation package and decides that there is not enough evidence to validate the inmate or if the placement committee decides not to put the inmate in ad-seg, the inmate is not subjected to the allegedly atypical and significant hardship of ad-seg that is necessary for a due process violation. Under the some evidence standard, the court does not decide whether the LEIU and placement committee made the right decision or whether they would have reached a different decision with a different recommendation. The court only determines if "some evidence supports the decision." Superintendent v. Hill, 472 U.S. at 455. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence." Id.

Also, even though Lopez claims he never had a meeting with Valdez, the memorandum that purported to memorialize the interview included several of the arguments that Lopez makes now. By consulting that memorandum, the LEIU would have the benefit of Lopez's views that (1) he was not in a position of authority over the Surenos at Salinas Valley, (2) he did not know why he was only list that purportedly listed EME affiliates, (3) he knew Raul Leon from the streets, (3) none of the documents discussed gang activity, (4) he did not know of any meaning of the symbol for the number 13, (5) the postcard was old and did not discuss gang activity, and (6) the names found written on documents in his cell were just acquaintances from the streets.

7

information and part of the information already had been proven true to prison officials.

The June 9, 2003 confidential memorandum contains information obtained by a correctional employee from a seized document that showed Lopez communicating with inmate Raul Leon, an EME gang member. The information was considered reliable under CDC standards because it was corroborated by information from another source, the source incriminated himself in criminal activity at the time of providing the information and part of the information already had been proven true to prison officials.

The court has reviewed in camera the foregoing two confidential memoranda and attached writings relied on to validate Lopez as an EME associate, mindful that Lopez will never be allowed to examine those materials himself. The confidential memoranda meet the "some evidence" standard and the evidence relied upon has sufficient indicia of reliability.[4] The two confidential memoranda are constitutionally reliable, i.e., the memoranda contain some factual information from which the validating committee could reasonably conclude that the information was reliable. See Zimmerlee, 831 F.2d at 186-87. The court also is satisfied that there is no safe alternative to in camera review. The record before the court contains an affirmative statement that safety concerns prevent disclosure of the informants' names. Even a redacted version of the memoranda could jeopardize people's safety because of the possibility that an inmate may be able to deduce from the memoranda who the informants were.

The third document relied upon was a July 17, 2003 CDC-128B memorandum written by correctional officer Garcia, who wrote that he had confiscated an envelope from Lopez's personal property. The envelope had Lopez's name, CDC # and housing unit written on it, as well as the Meso-American Mayan/Aztec symbol for the number 13. The author further wrote that the IGI's office confirmed that associates of the EME prison gang use the symbol to show their loyalty to the gang.

The fourth document relied upon was an August 4, 2003 CDC-128B memorandum

---

[4] The documents filed under seal included a third confidential memorandum dated May 6, 2003. That confidential memorandum was specifically rejected and not relied on to validate Lopez. See Def. Exh. G. Therefore, it is not considered by this court in determining whether there was sufficient reliable evidence to support the validation decision.

8

written by defendant Valdez. The memorandum recounted that the author had obtained incoming mail addressed to Lopez at Salinas Valley that contained a letter from inmate Raul Leon, a validated EME member then at Pelican Bay, apparently via a known outside mail drop for Lopez. The author wrote that Pelican Bay's IGI office confirmed that the handwriting on the letter was similar to Leon's handwriting. The author wrote that the letter illustrated that Lopez was in communication with an EME member, and this was indicative of EME prison gang activity.

The fifth item relied on was a December 3, 2003 CDC-128B memorandum also written by defendant Valdez. In this memorandum, the author wrote that he had discovered during a search of Lopez's property a postcard signed by "'Huerito' Shell Town San Diego," identified as Raul Leon, a validated EME member from San Diego. The author wrote that Pelican Bay's IGI office confirmed that the handwriting on the postcard was similar to Leon's handwriting. The author wrote that the letter illustrated that Lopez was in communication with an EME member and this was indicative of EME prison gang activity.

The sixth item relied on was a CDC-128B memorandum also dated December 3, 2003, and also written by defendant Valdez. In this memorandum, Valdez wrote that he had discovered two other items linking Lopez to the EME activity during his search of Lopez's property on December 3, 2003. A personal address book had contact information for Raul Leon, a validated EME member, as well as the name of inmate Lutero, who was a validated inactive EME associate. There also was a piece of paper that had the contact information for inmate Lugo, a validated EME associate. The author wrote that these items illustrated Lopez's association with EME members/associates, and this was indicative of EME prison gang activity.

Lopez argues that none of the documents show him engaging in or directing another person to engage in any criminal act. It is not necessary that a document show that the inmate directed or engaged in criminal acts to use the evidence to validate him as an associate of a prison gang. Likewise, it is not necessary that a document used to validate the inmate specifically refer to the EME prison gang by spelling out its name in English. Lopez's disagreement with the meaning and evidentiary value of the documents does not prove that they

9

could not be used to place him in ad-seg as a validated gang associate.

The number of sources is irrelevant to the federal due process analysis which considers whether there is "some evidence" to support the determination without regard for the particular number of sources. The state regulation's requirement of three separate sources is a matter of state law and does not dictate the outcome of the federal due process analysis. Even a single source of information can be sufficient to satisfy the federal due process "some evidence" standard. See Bruce, 351 F.3d at 1288. The evidence here met the "some evidence" standard and was sufficiently reliable to satisfy due process standards.

Lopez has failed to show that there is a triable issue of fact on his claim that the evidence supporting the decision to validate him as an associate of the EME and place him in ad-seg was insufficient to satisfy the requirements of due process. Defendant is entitled to judgment as a matter of law on the claim that the evidence relied upon did not comport with due process standards. Defendant also is entitled to judgment as a matter of law on his defense of qualified immunity because there was no constitutional violation. See Saucier v. Katz, 533 U.S. 194 (2001).

**CONCLUSION**

Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART. (Docket # 9.) Defendant is entitled to judgment as a matter of law on plaintiff's claim that the evidence relied upon to validate and place him in ad-seg was not sufficient to satisfy due process claim. Defendant is not entitled to judgment as a matter of law on plaintiff's claim that plaintiff was not afforded his due process right to have an opportunity to present his views.

No later than **June 22, 2007**, the parties must file and serve status reports indicating what discovery remains to be done, the amount of time needed for discovery, whether any further motions will be filed, when they will be ready for trial, and the expected length of the trial. The status conference statements need not be jointly prepared.

1   Defendant must file and serve an answer to the complaint no later than **June 22, 2007.**

2   IT IS SO ORDERED.

3   Dated: May 10, 2007

/s/ Susan Illston
SUSAN ILLSTON
United States District Judge