UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE CARLOS LOPEZ,<br><br>             Plaintiff,<br><br>   v.<br><br>HOREL (warden),<br><br>             Defendant.<br>_____ / | No. C 06-4772 SI (pr)<br><br>**ORDER RE. MISCELLANEOUS REQUESTS, DISCOVERY, AND REFERRING CASE TO MEDIATION PROGRAM** |

A.   <u>Miscellaneous Requests From Plaintiff</u>

On May 10, 2007, the court granted partial summary judgment in defendant's favor and ordered the parties to each file status reports no later than June 22, 2007. Plaintiff did not file the status report by the deadline and instead filed several other documents which are now before the court for consideration.

Plaintiff filed two motions for appointment of counsel. (Docket # 33, # 38.) These motions are his third and fourth requests for the court to appoint counsel for him. See Docket # 3, # 8. The due process claim remaining for trial is relatively straightforward (i.e., whether plaintiff was allowed to present his views to the decision-maker in connection with his validation as a gang affiliate), and there is not much discovery remaining to be done. Having considered the likelihood of success on the merits and the ability of the plaintiff to articulate his claims <u>pro se</u> in light of the complexity of the legal issues involved, the court concludes that exceptional circumstances requiring the appointment of counsel are not present here. See <u>Wilborn v. Escalderon</u>, 789 F.2d 1328, 1331 (9th Cir. 1986). The motions for appointment of counsel are DENIED. (Docket # 33, # 38.)

Plaintiff requested an extension of time to file his status report, claiming that he needed to have an answer to his motions for appointment of counsel and needed the court to "inform plaintiff in layman terms exactly what this court is requesting." Plaintiff now has the court's ruling on his recent motions for appointment of counsel. The court already explained what it wanted the parties to include in their status reports: each party was directed to file and serve a status report "indicating what discovery remains to be done, the amount of time needed for discovery, whether any further motions will be filed, when they will be ready for trial, and the expected length of the trial." Order Granting Partial Summary Judgment, p. 10. Plaintiff also now has the benefit of having seen defendant's status report, which was filed a month ago. Plaintiff's application for an extension of time is GRANTED. (Docket # 34.) Plaintiff's status report, received at the court on July 23, 2007, will be accepted. Plaintiff's status report is, however, so vague and uninformative that it is virtually worthless in aiding the court in case management. See Plaintiff's Status Report dated July 19, 2007 (plaintiff reports that he wants to do a deposition upon written questions and "may file additional discovery" of an unidentified sort, that he is "not sure when discovery will be completed," that he may file "additional motions" of an unidentified sort, and that he is "not sure" when he will be ready for trial).

Plaintiff filed a second motion for leave to file a motion for reconsideration. Plaintiff's motion is based on the premise that documents used to validate him as a gang member or associate must show that he was engaged in or directed criminal acts. See Motion for Leave To File Reconsideration, p. 4. Plaintiff is wrong on the law: a document need not show that the inmate engaged in or directed actual criminal activity for that document to be used to validate an inmate as a gang member or associate. Although evidence of criminal activity may be used to validate an inmate, it is not the only kind of evidence that may be used. See 15 Cal. Code Regs. § 3000 ("gang" defined), § 3378(c) (gang involvement investigation and sources).[1]

---

[1] Plaintiff also argues that the settlement agreement in Castillo v. Alameida, N.D. Cal. Case No. C 94-2847 MJJ, supports his position. That argument has no merit because the settlement agreement – the existence of which the court can take judicial notice -- does not state that there must be a showing that an inmate engaged in or directed actual criminal activity to be validated. Moreover, the settlement agreement does not provide a basis for a § 1983 claim for relief because it did not determine that there was any constitutional violation in the validation

2

Because plaintiff's legal premise is wrong, his motion fails. The second motion for leave to file a motion for reconsideration is DENIED. (Docket # 37.) The court will not entertain any further motions for reconsideration from plaintiff.

B.     <u>Discovery</u>

Plaintiff has sent to the court a letter enclosing discovery requests. The court generally is not involved in the discovery process and only becomes involved when there is a dispute between the parties about discovery responses. Discovery requests and responses normally are exchanged between the parties without any copy sent to the court. <u>See</u> Fed. R. Civ. P. 5(d) (listing discovery requests and responses that "must not" be filed with the court until they are used in the proceeding or the court orders otherwise). Only when the parties have a discovery dispute that they cannot resolve among themselves should the parties even consider asking the court to intervene in the discovery process. The court does not have enough time or resources to oversee all discovery, and therefore requires that the parties present to it only their very specific disagreements. To promote the goal of addressing only very specific disagreements (rather than becoming an overseer of all discovery), the court requires that the parties meet and confer to try to resolve their disagreements before seeking court intervention. <u>See</u> Fed. R. Civ. P. 37(a)(2)(B); N. D. Cal. Local Rule 37. Where, as here, one of the parties is a prisoner, the court does not require in-person meetings and instead allows the prisoner and defense counsel to meet and confer by telephone or exchange of letters. Although the format of the meet-and-confer process changes, the substance of the rule remains the same: the parties must engage in a good faith effort to meet and confer before seeking court intervention in any discovery dispute.

Plaintiff filed a request for production of documents. As explained in the preceding

---

process, and, even if it did, a settlement agreement would not provide a right secured by the Constitution or laws of the United States, the violation of which is a necessary element of a § 1983 claim. Further, plaintiff was validated as a gang affiliate months before the <u>Castillo</u> settlement agreement was executed in September 2004. The <u>Castillo</u> settlement agreement contemplated prospective changes and acknowledged that it would take several months for those changes to be implemented.

3

1  paragraph, plaintiff does not need to and should not be filing such discovery requests. They
2  should be sent directly to defense counsel without any involvement of the court.

3  Plaintiff also filed a "motion for a court order granting plaintiff's motion to serve two
4  voluntarily request for affidavit via mail to IGI lieutenant J. Sareli and CCIII W. Wilson." The
5  motion is DENIED as unnecessary. Plaintiff does not need court permission to send documents
6  to CDCR employees, and he does not show a basis for the court to compel those non-parties to
7  answer plaintiff's request for an affidavit. Also, the procedure plaintiff is trying to use is not one
8  of the formal discovery tools permitted by the Federal Rules of Civil Procedure. To the extent
9  plaintiff wants non-parties to answer questions, an oral deposition is the normal discovery tool
10 to use to obtain such answers. He does not need court authority to conduct an oral deposition.

11 Plaintiff also filed a "motion for order granting plaintiff's motion to file a 'deposition upon
12 written questions' to defendant." The motion is DENIED as unnecessary because plaintiff does
13 not need court permission to do such a deposition. If plaintiff wants to depose defendant on
14 written questions, plaintiff needs to set up such a deposition, arrange for a court reporter and
15 arrange for the attendance of the witness.[2] It is not defendant's obligation or the court's

---

[2] The deposition upon written questions procedure may sound like an inexpensive way for a prisoner to do discovery but usually is not. A deposition upon written questions is covered by Rule 31 of the Federal Rules of Civil Procedure. The deposition upon written questions basically would work as follows. The prisoner would send out a notice of deposition that identifies (a) the deponent (i.e., the witness), (b) the officer taking the deposition, (c) a list of the exact questions to be asked of the witness, and (d) the date and time for the deposition to occur. The defendant would have time to send to the prisoner written cross-examination questions for the witness, the prisoner would then have time to send to defendant written re-direct questions for the witness, and the defendant would have time to send to the prisoner written re-cross-examination questions for the witness. When all the questions --without any answers-- are ready, the prisoner would send them to the deposition officer and the officer would take the deposition of the witness. (The deposition officer can be any person authorized by law to administer oaths, see Fed. R. Civ. P. 28(a), such as a notary public and need not be a court employee.) The questions are read by the deposition officer, the responses are reported by a court reporter and the transcript is prepared as it would be for an oral deposition. The deposition officer does not stray from the written script of questions and asks only those questions that are on the list from the prisoner and defendant. To depose a non-party on written questions, that witness must be subpoenaed. To obtain a deposition upon written questions, the prisoner thus has to pay the witness fee, deposition officer fee, court reporter fee, and the cost of a transcript of the proceedings. The procedure is not much cheaper than an oral deposition unless there are substantial travel expenses that would be incurred to bring the witness to the prisoner or the prisoner to the witness. In addition to the cost, the evidence-gathering ability in such a deposition is quite limited. The requirement that the questions all be written and shared in advance means that there is no opportunity for follow-up questions when a witness makes a

obligation to do so. As the discussion in the footnote indicates, plaintiff's proposal to not divulge his proposed questions to defense counsel in advance of the deposition is not possible under the Rule 31 procedure.

The parties should proceed with their discovery efforts, but it appears to the court that the amount of discovery remaining to be done is quite limited. Accordingly, the court will refer this case to Magistrate Judge Vadas for mediation notwithstanding the ongoing discovery.

C.  Referral To Magistrate Judge Vadas

The court has established a Pro Se Prisoner Mediation Program under which certain prisoner civil rights cases may be referred to a neutral magistrate judge for prisoner mediation proceedings. The proceedings will consist of one or more conferences as determined by the mediator. Good cause appearing therefor, this case is now referred to Magistrate Judge Vadas for mediation proceedings pursuant to the Pro Se Prisoner Mediation Program. The proceedings will take place within 90 days of the date this order is filed. Magistrate Judge Vadas will coordinate a time and date for a mediation proceeding with all interested parties and/or their representatives and, within 5 days after the conclusion of the mediation proceedings, file with the court a report for the prisoner mediation proceedings.

The clerk will send to Magistrate Judge Vadas in Eureka, California, a copy of the case file for this action.

IT IS SO ORDERED.

Dated: 7/27/07

*Susan Illston*
SUSAN ILLSTON
United States District Judge

---

statement that is unexpected. Poorly worded questions will often result in useless answers – a problem that makes procedure particularly difficult for an unrepresented litigant.

5